## GEORGETOWN MERCANTILE CO. v. FIRST NAT. BANK OF GEORGETOWN.

(Court of Civil Appeals of Texas. Austin. March 4, 1914.)

1. ACTION (§ 25*)—CONFORMITY TO PLEADINGS—NATURE AND FORM OF REMEDY.

In Texas there is no distinction in the administration of judicial redress between law and equity, and the courts in the same suit will administer whatever remedy a litigant is entitled to, whether legal or equitable.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 124–145, 147–149, 153, 156–159, 313; Dec. Dig. § 25.*]

2. SUBROGATION (§ 23*) — CORPORATIONS — RIGHT OF OFFICERS MAKING ADVANCES.

Where the president and vice president of a corporation, which was in need of money, but had borrowed all that its bank was willing to lend, gave their personal note, bearing interest at 8 per cent. and providing for attorney's fees to the bank, and placed the proceeds to the credit of the corporation, which used them in paying its debts, it was bound to reimburse them for the amount of a judgment recovered on the note, including interest at the stipulated rate and attorney's fees.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23.*]

3. JUDGMENT (§ 251*)—CONFORMITY TO PLEADINGS.

Where, in an action on a note given by the president and vice president of a corporation for borrowed money which they placed to the credit of the corporation, and which was used by it in the payment of its debts, they filed a special plea setting up such facts, a judgment in their favor against the corporation would not be denied on the ground that it was liable, if at all, on an implied obligation, since the plea did not, as claimed, found their right to recover on the note.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

4. CORPORATIONS (§ 308*)—COMPENSATION OF OFFICERS—EXTRA SERVICES.

Where the president of a corporation filled the position of general manager, and rendered the services formerly rendered by the manager, worked as a salesman, being usually the first man to reach the store and the last to leave it, and even helped with the sweeping, he was entitled to compensation for such services, though the by-laws required officers' salaries to be fixed by the board of directors, and no salary for the president was fixed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

Appeal from District Court, Williamson County; Chas. A. Wilcox, Judge.

Action by the First National Bank of Georgetown against the Georgetown Mercantile Company and others. From a judgment against it, the defendant named appeals. Affirmed.

Fisher & Fisher, of Georgetown, for appellant. W. M. Allison, of Georgetown, for appellee bank. Nunn & Love, of Georgetown, for appellee Edwards.

KEY, C. J. The First National Bank of Georgetown brought this suit against W. W. Edwards and John R. Allen as makers of the second note hereinafter referred to, and against the Georgetown Mercantile Company as indorser thereon. The latter answered by a special demurrer, general denial, and a special answer, alleging that the indorsement upon the note was not made for its benefit, but for the benefit of the defendant Edwards, without any authority from it. That defendant also set up a cross-action against the defendant Edwards for $814.30 upon an account for merchandise sold to him. The defendant Edwards answered the plaintiff's petition by a general demurrer and general denial. He also filed a special plea, setting out a full history of the transactions, which resulted in the execution of the note sued on, and prayed in the alternative for a judgment against the mercantile company for whatever sum the plaintiff might recover against him. Edwards also filed an answer to the cross-action asserted against him by the mercantile company, in which he claimed that he was entitled to certain credits upon his account with that company, including a credit of $800 for services rendered, and which credits left him indebted to the mercantile company in the sum of $14.28, and no more, which sum he tendered in court and deposited with the clerk. Defendant Allen filed an answer which, among other things, adopted the answer of his codefendant, Edwards, as to the right to recover judgment over against the mercantile company for such amount as the plaintiff might recover against him. On the 21st day of August, 1912, the Georgetown Mercantile Company, a trading corporation, was in need of money, which it was unable to obtain without assistance, as it had borrowed from its bank all that the bank was willing to lend it. Thereupon its president, W. W. Edwards, and its vice president, John R. Allen, made an arrangement with the bank, as a result of which they executed a note to the bank for $2,500, with 8 per cent. interest, and a stipulation for 10 per cent. attorney's fees. When the note was executed, and as part of the same transaction, the bank drew a check for $2,500 in favor of John R. Allen, which was then and there by him deposited in the bank to his credit, and he thereupon drew a check for the same amount in favor of the Georgetown Mercantile Company, which was delivered to the bank and placed by it to the credit of the Georgetown Mercantile Company, and was used by that company in the payment of its debts. The note referred to fell due October 21, 1912, whereupon Ed-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

wards and Allen executed another note, similar in all respects to the first one, and some one made the following indorsement upon the back thereof: "Georgetown Mer. Co. Int. paid to Jan. 3/1913." It was shown by undisputed testimony that the Georgetown Mercantile Company paid the interest on the latter note to January 3, 1913. The plaintiff sued the mercantile company as indorser of the note, and the mercantile company did not deny under oath that the indorsement was made by it or by its authority. The only testimony as to how and by whom the indorsement was placed on the note was given by the defendants, Edwards and Allen. Edwards first testified that his codefendant, Allen, made the indorsement, but afterwards stated that he, Allen, and Carothers, the president of the bank, were all present, and he did not know which placed the indorsement on the note, but thought it was done by Allen. The defendant Allen testified that he knew nothing about the indorsement on the note; that he was not then president of the mercantile company, and had nothing to do with such. matters. There was a nonjury trial, which resulted in a judgment for the bank against Edwards and Allen for the full amount of the note, interest, and attorney's fees, and judgment over in favor of Edwards and Allen against the Georgetown Mercantile Company for the same amount of the bank's judgment against them. Judgment was also rendered in favor of the mercantile company against Edwards for $114.-30, to be credited upon any amount that Edwards might have to pay to the plaintiff upon its judgment against him. The Georgetown Mercantile Company alone has appealed.

### Opinion.

[1, 2] As against the judgment over in favor of appellees, Edwards and Allen, for the amount of the judgment recovered by the bank against them, counsel for appellant contend: (1) That the court erred in rendering that judgment because the mercantile company was not primarily a party to the contract between Edwards and Allen and the bank; (2) that if the mercantile company was liable to Edwards and Allen at all, such liability was not founded upon the note, but upon an implied obligation, constituting an assumpsit, and that the pleadings did not authorize the relief granted; and (3) that in no event was the mercantile company liable to Edwards and Allen for more than $2,500, with 6 per cent. interest per annum, and that so much of the judgment as allowed 8 per cent. interest and 10 per cent. attorney's fees, was erroneous. We overrule all of these contentions. In determining the rights of the litigants in this case, it should be borne in mind that in this state there is no distinction in the administration of judicial redress between law and equity, and that our courts in the same suit administer whatever remedy a litigant may be entitled to, whether such remedy be legal or equitable. It requires no argument to show that in the forum of conscience the Georgetown Mercantile Company ought to reimburse Edwards and Allen for whatever sum of money they are required to pay, by reason of the fact that they executed the note upon which the bank recovered judgment against them. They were the two highest officers of the company, and their only object in incurring the original liability which resulted in the execution of the note sued on was for the accommodation and benefit of the company. As a result of their incurring that liability, the company received $2,500, and they derived no benefit whatever from the transaction. It is manifest that they acted in good faith and for the sole purpose of promoting the welfare of the company, and the testimony does not indicate that the company could have obtained the money needed from any other source or upon less onerous terms; and, according to the plain rules of right and justice, which rules it is the province of a court of equity to enforce, the company should be compelled to hold them harmless, and this is all that the judgment complained of has undertaken to accomplish.

In this respect this case is quite similar to Gaston & Ayres v. Campbell Co., 104 Tex. 576, 140 S. W. 770, 141 S. W. 515, where the Supreme Court, speaking through Mr. Justice Ramsey, said: "Again, it seems to us that when analyzed, in the light of the uncontroverted evidence, the whole case comes to this: The transaction in question was in fact by the company and for the company. Now, if the company had executed the note in its proper name, and same had been indorsed or guaranteed by I. L. Campbell, it would not be questioned that the company would be liable at the suit of any purchaser for value, without notice. Can the fact that, as a matter of convenience, in a transaction in which the company was the real actor, and in which it only was to be benefited, the note was in form made the obligation of I. L. Campbell, and at the same time guaranteed by the company, change the rights of a bona fide holder thereof? *Suppose I. L. Campbell had been compelled to have paid this note; can it be doubted that he would have the right to reimbursement from the company, if the company had received the entire consideration?* Now, no one will question the statement that the rights of Gaston & Ayres cannot be made to depend on the disposition made of the proceeds of the note by Clark. *We come, therefore, to the question, Shall the rights of the parties and the right and justice of the case be made to depend on the mere form the transaction took or the apparel in which it was clothed? We cannot think so. The law ever pays but scant respect to mere appearance, but should and does give its first attention to the realities and very truth of every*

*transaction.* Holding these views, it results that, having the right to borrow money, and having obtained on its note the money of these plaintiffs in error who were in the transaction without blame or fault, the company must, under the law, and should as a matter of right, repay them. We agree with the trial court and the Court of Civil Appeals that there was no legal evidence raising the issue that the sum paid T. W. House was, or that the sum should be, treated as the funds of I. L. Campbell. The transaction in its inception, and until the note was given and guaranteed, was the act and business for the benefit of the company, and must be treated as such." The italics are ours, and indicate that portion deemed applicable to this case. The term "law" as used in the quotation was no doubt intended, as it is often used in this state, to include the principles and rules of equity, as well as those of law; and it embodies a clear and forceful statement of one of the fundamental rules of equity, and which rule has application to and controls this case.

[3] We do not agree with appellant in the contention that appellees, Edwards and Allen, founded their right to recover against appellant upon the note which formed the foundation of the bank's suit. The plea of Edwards, which was adopted by his codefendant, Allen, embodied a full statement of the transaction, and did not seek to recover upon the note, but sought to recover against appellant because of the fact that they had adopted the only available means by which money could be secured, not for them, but for appellant; and therefore, in equity and good conscience, appellant ought to hold them harmless. We think the pleading referred to was sufficient to entitle them to the relief sought and obtained.

[4] The trial court held that appellee Edwards was entitled to a credit of $700 upon his account with appellant, the mercantile company, the reasonable value of services rendered by him for the company. The court made a finding, embodied in the judgment, that the services referred to were worth $100 per month, and that the time of service was seven months, making an aggregate of $700. Appellant presents the contention that, inasmuch as appellee Edwards was president of the mercantile company, and as the by-laws required all salaries of officers to be fixed by the board of directors, and as no salary for the president was fixed, therefore the court erred in allowing him the credit of $700 on his account as compensation for his services. In his pleading Edwards alleged the necessary facts, and sought to recover upon a quantum meruit for the value of certain services rendered by him. He testified that up to the 1st of March, 1912, the corporation had a Mr. Banner employed as manager, and that after that time and up to November he acted as general manager, filling the position and rendering the services formerly rendered by Mr. Banner; that the corporation paid Mr. Banner $125 a month. He also testified that from the 1st of March to the 1st of November he managed the business and worked as a salesman, worked all the time; that he was generally the first man to reach the store and the last to leave it; that he even helped to do the sweeping. There was other testimony corroborating Edwards in that respect, and tending to show that the services rendered by him, apart from those which he was required to perform as president of the corporation, were worth at least the amount awarded to him. Upon this state of facts we uphold the action of the trial court, and overrule appellant's contention, as to Edwards' right to compensation for extra services and the further contention that there was no proof of the value thereof.

No error has been shown and the judgment is affirmed.

Affirmed.